**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

RICHARD R. HENNING,

       Appellant,

v.                                **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 06-4918 (MJD)

MAINSTREET BANK,

       Appellee.

_____

Jamie R. Pierce, Mansfield Tanick & Cohen, PA, Counsel for Appellant Richard R. Henning.

Eric J. Sherburne, Stein & Moore, Counsel for Appellee.

_____

**I.    INTRODUCTION**

      This matter is before the Court on Appellant Richard R. Henning's appeal of the November 22, 2006, Order of the Bankruptcy Court, Judge Nancy C. Dreher, Granting Defendant's Motion for Summary Judgment.

      Henning states the following issues for review:

    1.    Whether the bankruptcy court erred in concluding that $200,000 of the outstanding principal on Respondent's loan to Appellant's business was not "paid," and therefore Respondent had no obligation to provide a satisfaction of its mortgage on the Appellant's homestead.

    2.    Whether the bankruptcy court erred in finding that Respondent's single ministerial duty to satisfy its mortgage

>   constituted a 'remaining dut[y] to render performance,' thus excusing Respondent from satisfying the mortgage upon a default.
>
> 3. Whether the bankruptcy court erred in failing to find that Appellant had no control over payment to Respondent at the time of default, thus excusing his failure to ensure that the main obligor voluntarily paid Respondent.

## II. BACKGROUND

### A. Factual Background

Henning was a principal and officer of several businesses, including Dick Henning Enterprises, Inc.; All Metro Supplies, Inc.; and Dick Henning Landscape, LLC (the "Corporations"). (App. 41.) Appellee Mainstreet Bank ("Mainstreet") provided financing to the Corporations and was owed money by them. (Id. 42.)

In July 2003, Henning was indebted to Mainstreet as the Guarantor of the Corporations under four separate promissory notes ("Predecessor Notes"):

1. Term Note: a promissory note dated March 28, 2002, in the original principal amount of $600,000 with an outstanding balance of $482,118.78, as of July 14, 2003;

2. Revolving Note: a promissory note dated March 28, 2002 in the original principal amount of $400,000 with an outstanding balance of $383,041.23, as of July 14, 2003;

3. Henning July Term Note: a promissory note dated July 7, 2002, in the original principal amount of $24,000, executed and delivered by Dick Henning Enterprises, Inc., with an outstanding balance of $19,488.11, as of July 14, 2003; and

4. Henning April Term Note: a promissory note dated April 4, 2003, in the original principal amount of $50,100.00 executed

and delivered by Dick Henning Enterprises, Inc., with an outstanding balance of $50,262.49, as of July 14, 2003.

(App. 75.)

Henning provided a personal guarantee on the obligations, as well as a mortgage dated March 28, 2002, in the amount of $250,000 on his homestead ("Mortgage").  (App. 42.)  The Mortgage was recorded in Carver County on May 22, 2002.  (Id.; App. 97-104.)

On July 14, 2003, as part of the restructuring of the Corporations' debts, Mainstreet, Henning, Henning's wife, and the Corporations entered an Assumption Agreement and Consent of Guarantors ("Assumption Agreement").  (App. 4.)  The Assumption Agreement consolidated much of the indebtedness owed under the Predecessor Notes and provided for assumption of these obligations by a new affiliated entity, Dick Henning Landscape, LLC.  (App. 4-9, 64.)

Under the terms of the Amended and Restated Promissory Note, Dick Henning Landscape, LLC promised to pay Mainstreet the principal amount of $600,000, plus interest.  (App. 81-83.)  The guaranty documents that had applied to the Predecessor Notes, including the Mortgage on Henning's homestead, ("Guaranty Documents") continued to secure repayment of the Amended and Restated Note.  (App. 4-7.)

The property collateral securing repayment of the Amended and Restated

3

Note, not including the Mortgage, was valued at approximately $650,000, discounted under the Assumption Agreement to an estimated auction value of $450,000.  (App. 64.)  Before the Assumption Agreement was executed, the Mortgage on Henning's homestead secured $250,000 of the Revolving Note, which had a balance of $383,041.23 on July 14, 2003.  After the Assumption Agreement was executed, the Mortgage secured $250,000 of the $600,000 initial balance of the Amended and Restated Note.  (Id.)  Altogether, the Amended and Restated Note was secured by approximately $700,000 in personal and real property collateral.  (Id.)

>Paragraph 7 of the Assumption Agreement stated:
>
> Guarantors Not Released.  The Guarantor hereby consents to and understands and acknowledges that the transfer of Assets and the assumption by the Purchaser of the obligations under the Financing Documents shall not release the Guarantor from any personal liability under the Guaranty Documents and that such Guaranty Documents shall remain in full force and effect.
>
> Notwithstanding the foregoing, the Lender hereby agrees that when $200,000 of the outstanding principal balance of the Amended and Restated Note has been paid, Lender upon written request from the Guarantor, will agree to release the Mortgage.  Furthermore, the Lender hereby agrees that when an additional $200,000 of the outstanding principal balance of the Amended and Restated Note has been paid, Lender upon written request from the Guarantor, will agree to release the Guarantor from his Guaranty.

(App. 6.)

>Dick Henning Landscape, LLC, was late on its first payment on the

Amended and Restated Note on August 15, 2003, and then also missed the next payment due date due on September 15, 2003.  (App. 65.)  After that, payments remained late and erratic.  (Id. 84.)  In mid-2004, Henning ceased serving as principal officer of Dick Henning Landscape, LLC.  (App. 42.)  On October 28, 2004, Mainstreet received its last payment from Dick Henning Landscape, LLC, on the Amended and Restated Note; at that time, a total of $124,061.10 had been paid on the initial principal of $600,000.  (Id. 84-85.)  At some point after mid-2004, the assets of Dick Henning Landscape, LLC, were liquidated.  (Id. 42.)

On July 20, 2004, Mainstreet initiated a state court lawsuit against Henning, his wife, and others to foreclose on the Mortgage and against Dick Henning Landscape, LLC and others to obtain a money judgment for any deficiency balance.  (App. 86-91.)  As of that date, $86,300.93 had been paid on the initial $600,000 amount of the Amended and Restated Note.  (Id. 84.)  During the course of the state court litigation, Dick Henning Landscape, LLC made three additional payments towards the principal: $15,336.52 on July 28, 2004; $9,726.92 on September 15, 2004; and $12,693.25 on October 14, 2004.  (Id.)

In relevant part, the Mortgage states:

EVENTS OF DEFAULT.  Each of the following, at lender's option, shall constitute an Event of Default under this Mortgage:

* * *

>     BREACH OF OTHER AGREEMENT.  Any breach by

> Borrower [or Grantor Richard Henning and Ellen Henning] under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender whether existing now or later.

* * *

RIGHTS AND REMEDIES ON DEFAULT. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

* * *

> Foreclosure and Sale. Lender may, and is hereby authorized and empowered to, foreclose this Mortgage by action or advertisement pursuant to the statutes of the State of Minnesota providing for such foreclosure. Power is expressly granted to Lender (1) to sell the Property at public auction and to convey the Property, in fee simple, to the purchasers at such sale, and (2) to pay, out of the proceeds of the sale, all of the Indebtedness secured by this Mortgage, with interest, and all legal costs and charges of the foreclosure including the maximum attorneys' fees permitted by law and Grantor agrees to pay all such costs and charges and fees.

(App. 101.)

During the state court litigation, Mainstreet enforced its lien against the personal property collateral. In May 2005, Mainstreet took possession and disposed of certain property by auction, receiving $150,971.88 in proceeds, of which Mainstreet applied $140,000 to the outstanding principal on the Amended

and Restated Note after deductions for costs associated with the repossession and sale.  (App. 65-66, 85.)  In October 2005, Mainstreet exercised its rights as a secured creditor against a certain account on which it had a lien, recovered $55,750.00, and applied that amount against the principal.  (App. 49, 85.)

As of October 14, 2005, Mainstreet had been paid principal of $124,061.10.  Additionally, it had applied approximately $196,000 in proceeds against the principal obtained through exercising its rights as a secured creditor after multiple defaults under the repayment terms of the Amended and Restated Note.  (App. 66, 85.)

### B. Procedural Background

On October 14, 2005, Henning filed a voluntary Chapter 7 petition in bankruptcy in the United States Bankruptcy Court, District of Minnesota.  On March 10, 2006, Henning filed a Complaint against Mainstreet under Fed. R. Bankr. P. 7001.  The Complaint alleged that Mainstreet was contractually required to release the Mortgage and sought an order determining the amount of Mainstreet's claim and holding that its claim is not secured by property of the bankruptcy estate or claimed exempt by Henning under 11 U.S.C. § 502.  Alternatively, Henning sought an order determining that Mainstreet's claim was not an allowed secured claim under 11 U.S.C. § 506(d).

Henning filed a motion for summary judgment seeking an order requiring

Mainstreet to release or satisfy the Mortgage on Henning's homestead. Mainstreet filed a cross motion for summary judgment seeking an order that Mainstreet's Mortgage was enforceable.

On November 22, 2006, the bankruptcy court filed its Findings of Fact, Conclusions of Law and Order for Judgment. The court held that, under Minnesota law, the term "paid" in the Assumption Agreement did not include proceeds received by virtue of Mainstreet exercising its rights as a secured creditor. Thus, Henning was not entitled to release of Mainstreet's Mortgage. Additionally, the court held that, under Minnesota law, when the borrower defaulted on the loan, Henning lost the right to demand release of the Mortgage. Finally, the court held that any determination of the amount of Mainstreet's claim was moot because Henning had received a discharge in his Chapter 7 bankruptcy case and there was no estate to be administered. The court denied Henning's motion for summary judgment, granted Mainstreet's motion for summary judgment, and dismissed Henning's Complaint with prejudice.

Henning filed this appeal of the bankruptcy court's order.

### III.   DISCUSSION

#### A.   Standard of Review and Applicable Law

This Court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions and conclusions involving mixed questions of law and fact de

novo.  DeBold v. Case, 452 F.3d 756, 761 (8th Cir. 2006).

Minnesota law applies to the interpretation of the Assumption Agreement. In re Wiese, 337 B.R. 206, 209 (Bankr. N.D. Iowa 2005) ("In construing and interpreting contracts, the court looks to state law.") (citing Butner v. United States, 440 U.S. 48, 54 (1979)).

### B. Meaning of the Term "Paid" in Paragraph 7 of the Assumption Agreement

The bankruptcy court held that the Assumption Agreement was unambiguous.  It then looked to the dictionary for the plain and ordinary meaning of the term "paid" and concluded that under that definition, Henning's debt to Mainstreet was not paid by Henning or anyone else.

> Where the language used in a contract is plain and unambiguous, there is no opportunity for interpretation or construction.  A contract is to be interpreted to give effect to the mutual intention of the parties at the time of contracting, and in so doing the language used governs if it is clear and does not involve an absurdity.  The meaning of a contract is to be ascertained from the writing alone, if possible, the duty of the court being to declare the meaning of what is written in the instrument, not what was intended to be written.  Where the words of a written contract are plain and unambiguous, its meaning should be determined in accordance with its plainly expressed intent.

Carl Bolander & Sons, Inc. v. United Stockyards Corp., 215 N.W.2d 473, 476 (Minn. 1974) (citations omitted).

> An ambiguity exists if the contract's language is reasonably susceptible of more than one meaning. . . .  [I]n order to be ambiguous in the legal sense, both constructions must be reasonable.

9

>[Defendant's] interpretation suggests that it is entitled to a credit whenever it pays the money due on the note, regardless of when full payment occurs.  Contracts are to be construed so as to avoid absurdity.

<u>Lakeland Tool & Eng'g, Inc. v. Thermo-Serv, Inc.</u>, 916 F.2d 476, 481 (8th Cir. 1990) (citations omitted) (citing Minnesota state law).

In this case, the Court concludes that Henning's interpretation of the Assumption Agreement is not reasonable and that the only reasonable interpretation is the one proffered by Mainstreet and adopted by the bankruptcy court.

Henning does not object to the dictionary definition of "paid" relied upon by the bankruptcy court.  Rather, he asserts that the application of that definition to the facts was incorrect.  He argues that the Assumption Agreement never requires payments to be voluntary or on time.  Henning concludes that because Mainstreet received more than $200,000 in money towards the $600,000 principal, it was "paid" the amount required for it to release its mortgage on Henning's homestead.

Henning's definition of the term "paid" is unreasonable because, rather than having Mainstreet be fully secured at all times, Mainstreet would have to release its Mortgage simply because it exercised its lawful rights as a secured creditor against the personal property collateral before obtaining a judgment of foreclosure in the state court action.

Mainstreet only received the proceeds from exercising its rights as a secured creditor by liquidating a portion of the collateral securing the loan.  After receiving those proceeds, Mainstreet no longer had that particular property as collateral to secure the remainder of the loan.  Thus, if it received approximately $200,000 in proceeds, it also lost $200,000 in collateral and the outstanding balance on the loan was only secured by the remaining collateral, which included the Mortgage on Henning's homestead.  In contrast, when Dick Henning Landscape, LLC "paid" on the loan by making required installment payments, the remaining principal on the loan decreased while Mainstreet maintained the security of a fully collateralized loan.  The purpose behind releasing the Mortgage on Henning's homestead after $200,000 had been "paid" was that the homestead would no longer be needed as collateral for the remaining $400,000 on the loan because there would still be at least $400,000 in collateral remaining, without the homestead, to secure the remainder of the loan.  In the situation before the bankruptcy court, however, collateral was used up at the rate of proceeds, so if Mainstreet were forced to also release the Mortgage on the homestead, it could be forced into the position of having less collateral than outstanding loan principal.  This result would be nonsensical and contrary to the clear intent of the parties.

Additionally, under Henning's interpretation, in order to keep itself fully secured, Mainstreet would have had to, instead, exercise its rights as a secured

creditor by first foreclosing on the Mortgage and then exercise its rights as a secured creditor by foreclosing its liens on the personal property.

The Court concludes that the amount "paid" under the Assumption Agreement only totaled $124,061.10, so Henning is not entitled to a release of the Mortgage because $200,000 has not been paid on the outstanding principal balance.

### C. Whether the Bank Was Excused from Further Performance

The bankruptcy court also held that, under Minnesota law, when the borrower defaulted on the loan, Henning lost the right to demand a release of the mortgage. Because the Court has affirmed the bankruptcy court on the ground that $200,000 of the outstanding principal balance of the Amended and Restated Note has not been paid, it need not address the bankruptcy court's alternative ground for granting summary judgment. In re Baldwin, 362 B.R. 413, 416 (B.A.P. 8th Cir. 2006) (holding reviewing court can affirm bankruptcy court on any grounds supported by the record); In re Sullivan's Jewelry, Inc., 226 B.R. 624, 626 (B.A.P. 8th Cir. 1998) (holding reviewing court does not need to address second alternative ground after affirming bankruptcy court's order on first alternative ground).

### D. Applicability of Equitable Relief

Henning raises a new argument on appeal: he claims that the bankruptcy

court erred by failing to find that he had no control over payment to Respondent at the time of default; thus, he should have been equitably excused for his failure to ensure that the main obligor voluntarily paid Mainstreet.  Henning did not seek equitable relief from the bankruptcy court.

> As a general rule, we will not consider issues not presented to the bankruptcy court in the first instance.  We may, however, consider an issue for the first time on appeal when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case, or where manifest injustice might otherwise result.

First Bank Investors' Trust v. Tarkio Coll., 129 F.3d 471, 477 (8th Cir. 1997) (citations omitted).

The Court will not address Henning's argument because the record below is devoid of the facts necessary to determine whether Henning is entitled to equitable relief.  See, e.g., Loving & Assocs., Inc. v. Carothers, 619 N.W.2d 782, 786 (Minn. Ct. App. 2000) (conducting fact-intensive inquiry to determine continued liability of guarantor).

Based on the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

> The bankruptcy court's Order Granting Defendant's Motion for Summary Judgment, filed November 22, 2006, is **AFFIRMED**.

Dated: July 24, 2007                                  s / Michael J. Davis
                                                                      Judge Michael J. Davis
                                                                      United States District Court